HODGE, APPELLANT *v.* MIDDLETOWN HOSPITAL ASSOCIATION; FIRST NATIONAL BANK OF SOUTHWESTERN OHIO, EXECUTOR, APPELLEE.

[Cite as *Hodge v. Middletown Hosp. Assn.* (1991), 62 Ohio St.3d 236.]

---

(No. 91–322—Submitted September 25, 1991—Decided December 18, 1991.)

*White, Getgey & Meyer* and *Nicholas E. Bunch,* for appellant.
*Baden, Jones & Scheper* and *James H. Scheper,* for appellee.

HERBERT R. BROWN, J.  Appellant presents three propositions of law for the court's consideration.  The first contention is that former R.C. 2315.19 did not

abrogate the doctrine of joint and several liability. The second contention is that R.C. 2305.27 does not permit the award in a medical malpractice claim to be reduced by benefits paid pursuant to Medicare Part A. The third contention is that R.C. 2305.27 is unconstitutional. The first and third propositions will be dealt with summarily; the second proposition is the only issue we need consider at length. For the reasons which follow, we affirm the court of appeals as to propositions one and three, and reverse as to proposition two.

## I

It is questionable whether the issue of joint and several liability is properly before this court.[1] In any case, the issue is settled by our recent holding in *Eberly v. A-P Controls, Inc.* (1991), 61 Ohio St.3d 27, 572 N.E.2d 633, paragraph three of the syllabus. Several or allocated liability among joint tortfeasors is triggered upon a finding of negligence on the part of the plaintiff under former R.C. 2315.19. In this case, the trial court acted properly in allocating liability among the defendants upon a finding of negligence on the part of Hodge.

The constitutional issue was resolved in *Morris v. Savoy* (1991), 61 Ohio St.3d 684, 693, 576 N.E.2d 765, 772, where we held R.C. 2305.27 to be constitutional.

## II

Hodge asserts that the trial court erred in determining that R.C. 2305.27 requires reduction of the malpractice award by the amount he received under Medicare Part A. R.C. 2305.27 reads in part: " * * * in any medical claim, * * * an award of damages shall not be reduced by insurance proceeds or payments or other benefits paid under any insurance policy or contract where the premium or cost of such insurance policy or contract was paid either by or for the person who has obtained the award, or by his employer, or both, or by direct payments from his employer, but shall be reduced by any other collateral recovery for medical and hospital care, custodial care or rehabilitation services, and loss of earned income. * * * "[2]

---

1. The reduction was made solely from Dr. Peil's estate's portion of the liability award, Hodge has already collected from the other defendants and Hodge has appealed solely against Peil's estate. For these reasons, Hodge is not affected by any ruling on joint and several liability.

2. R.C. 2305.27 provides in full:

    "Except as provided in section 2743.02 of the Revised Code, in any medical claim, as defined in division (D) of section 2305.11 of the Revised Code, an award of damages shall not be reduced by insurance proceeds or payments or other benefits paid under any insurance policy or

Hodge contends that benefits received under Medicare Part A are insurance payments made under a policy where the premium was paid by himself, and therefore his damage recovery against Peil's estate should not have been reduced. Appellee contends that Medicare Part A payments are "other collateral recovery," rather than insurance proceeds, and therefore the trial court did not err in reducing the award by that amount. The issue of whether Medicare Part A constitutes "insurance" or "other collateral recovery" under R.C. 2305.27 is one of first impression in this court.

Medicare Part A is a federal program which pays hospital and related benefits to individuals age 65 or over and certain others who meet eligibility requirements. It is financed by compulsory payroll taxes administered through the Federal Hospital Insurance Trust Fund. Medicare Part A is described as follows: "The insurance program * * * [which] provides basic protection against the costs of hospital, related post-hospital, home health services, and hospice care * * *." Section 1395c, Title 42, U.S.Code.[3] The Tenth Circuit Court of Appeals in *Martinez v. Richardson* (1973), 472 F.2d 1121, 1123, described Medicare as "an Act of 1965 to protect individuals 65 years of age and over from the high cost and the hardship of illness. *Part A is a program of hospital insurance.* It has a trust fund, the source of which is taxes paid by the employees, employers and self-employed persons. The benefits available under Part A include hospital coverage and a variety of post-hospital home health care services." (Emphasis added.)

Appellee directs our attention to *Holaday v. Bethesda Hospital* (1986), 29 Ohio App.3d 347, 29 OBR 475, 505 N.E.2d 1003, wherein it was held that

---

contract where the premium or cost of such insurance policy or contract was paid either by or for the person who has obtained the award, or by his employer, or both, or by direct payments from his employer, but shall be reduced by any other collateral recovery for medical and hospital care, custodial care or rehabilitation services, and loss of earned income. Unless otherwise expressly provided by statute, a collateral source of indemnity shall not be subrogated to the claimant against a physician, podiatrist, or hospital."

**3.** Section 1395c, Title 42, U.S.Code provides in full:

"*The insurance program for which entitlement is established* by sections 426 and 426–1 of this title provides basic protection against the costs of hospital, related post-hospital, home health services, and hospice care in accordance with this part for (1) individuals who are age 65 or over and are eligible for retirement benefits under subchapter II of this chapter (or would be eligible for such benefits if certain Federal employment were covered employment under such subchapter) or under the railroad retirement system, (2) individuals under age 65 who have been entitled for not less than 24 months to benefits under subchapter II of this chapter (or would have been so entitled to such benefits if certain Federal employment were covered employment under such subchapter) or under the railroad retirement system on the basis of a disability, and (3) certain individuals who did not meet the conditions specified in either clause (1) or (2) but who are medically determined to have end stage renal disease." (Emphasis added.)

Medicaid payments reduce a medical malpractice damage award under R.C. 2305.27. Medicaid payments, however, are significantly different from benefits paid as Medicare Part A. Medicaid is a system for providing payment of medical costs for the poor. Neither the beneficiary nor his employer pays premiums or underwrites the cost of the program.

Appellee also relies on decisions from other jurisdictions, namely: *Wojtkowski v. Hartford Accident & Indemnity Co.* (1976), 27 Ariz.App. 497, 556 P.2d 798; *Imvris v. Michigan Mut. Ins. Co.* (1972), 39 Mich.App. 406, 198 N.W.2d 36; and *Witherspoon v. St. Paul Fire & Marine Ins. Co.* (1976), 86 Wash.2d 641, 548 P.2d 302, to support the argument that Medicare Part A benefits are not "insurance," but part of a social welfare system. Those cases are inapposite. All three involve construction of language in insurance policies. Policy provisions are interpreted strictly against the drafter of the language and the policy language construed in those cases differs from that contained in the Ohio statute which governs our decision here. In this case, we construe a statute, not a contract of insurance.

R.C. 2305.27 was enacted as part of sweeping reform, as a response to a perceived malpractice insurance crisis. *Morris v. Savoy, supra,* 61 Ohio St.3d at 686–687, 576 N.E.2d at 768–769. The legislative intent behind the statute appears to be the prohibition of double recovery on medical claims for those plaintiffs whose collateral coverage was not paid for by themselves or their employers. See *Morris v. Savoy,* 61 Ohio St.3d at 693, 576 N.E.2d at 772; *Holaday, supra,* 29 Ohio App.3d at 348, 29 OBR at 477, 505 N.E.2d at 1005.

To fund Medicare Part A coverage, every employee and employer pays a portion of each paycheck into the Federal Hospital Insurance Trust Fund. In the broadest sense, then, Medicare Part A is insurance paid for by the employer and employee, for the benefit of the employee. To reduce the verdict against a tortfeasor by deducting Medicare payments would be to give the tortfeasor a benefit paid for out of the wages of the plaintiff. The argument is at cross purposes with the intent underlying R.C. 2305.27. In essence it would make the victim of a tort pay the tortfeasor's damages.

Appellee makes much of the fact that participation in the Medicare program is not voluntary. We find this reasoning unpersuasive. Although participation is not voluntary, the General Assembly, in enacting R.C. 2305.27, did not make voluntary participation a condition to its definition of "insurance." Insurance can be voluntary or compulsory.

Appellee also contends that because the program is not voluntary, the beneficiary cannot be said to have entered into a "contract" under R.C. 2305.27. This argument is also not persuasive. Payment into the trust fund, though involuntary, is in exchange for health care coverage, and gives rise to

a duty on the part of the government to pay benefits when required. In addition, the language of the statute specifically refers to *"policy or* contract" of insurance.

In short, Medicare Part A is funded by payments made by beneficiaries and their employers, is actuarially determined, and is described by its enabling statute as insurance. Nothing in R.C. 2305.27 requires that the premium payments be voluntary. For these reasons, we hold that Medicare Part A benefits fall under the definition of "insurance" in R.C. 2305.27, and therefore do not reduce medical malpractice damage awards.

Accordingly, we reverse the judgment of the court of appeals, and remand the cause for action in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., and WRIGHT, J., concur.

SWEENEY, DOUGLAS and RESNICK, JJ., concur in part and dissent in part.

HOLMES, J., concurs in judgment only.

DOUGLAS, J., concurring in part and dissenting in part. I concur with the syllabus, the judgment and Part II [4] of the majority opinion. I respectfully dissent from that portion of Part I of the opinion which finds R.C. 2305.27 to be constitutional. On the question of the constitutionality of R.C. 2305.27, I subscribe to and would follow, in all respects, Justice Sweeney's opinion concurring in part and dissenting in part in *Morris v. Savoy* (1991), 61 Ohio St.3d 684, 700–717, 576 N.E.2d 765, 777–788.

SWEENEY and RESNICK, JJ., concur in the foregoing opinion.

---

4. I concur with the discussion in Part II of the opinion with the exception that I would not describe the enactment of R.C. 2305.27 to be part of sweeping "reform."