[Cite as *Johnston v. N. Kingsville*, 2021-Ohio-1012.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| TIFFANY JOHNSTON, INDIVIDUALLY AND AS MOTHER AND GUARDIAN OF H.J. (A MINOR), et al., | : | **O P I N I O N** |
| | : | |
| Plaintiffs-Appellees, | : | |
| | : | **CASE NO. 2020-A-0031** |
| - vs - | : | |
| VILLAGE OF NORTH KINGSVILLE, OHIO, et al., | : | |
| | : | |
| Defendants-Appellants. | : | |
| | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2018 CV 00726.

Judgment: Reversed and remanded.


*Ryan H. Fisher* and *Kyle B. Melling,* Lowe Eklund Wakefield Co., LPA, 610 Skylight Office Tower, 1660 West Second Street, Cleveland, OH  44113 (For Plaintiffs-Appellees).

*Jeffrey T. Kay,* Mazanec, Raskin & Ryder Co., LPA, 100 Franklin's Row, 34305 Solon Road, Cleveland, OH  44139 (For Defendant-Appellant, Village of North Kingsville, Ohio).

*William E. Riedel,* Law Offices of Katherine S. Riedel Co., 1484 State Route 46 North, No. 5, Jefferson Commercial Park, Jefferson, OH 44047; and *Mel L. Lute, Jr.,* Baker, Dublikar, Beck, Wiley & Mathews, 400 South Main Street, North Canton, OH  44720 (For Defendant-Appellant, Dominic Paollilo).


CYNTHIA WESTCOTT RICE, J.

{¶1} Tiffany Johnston, Individually and as Mother and Guardian of H.J. (a Minor), et al., filed a complaint alleging, inter alia, negligence against appellants, Village of North Kingsville ("Village"), Ohio, et al. Appellants filed an answer, asserting, inter alia, the defense of political subdivision tort immunity, under R.C. Chapter 2744. After appellants filed a motion for summary judgment, and appellees duly responded, the Ashtabula County Court of Common Pleas concluded appellants were not entitled to summary judgment because there were genuine issues of material fact regarding its defense of immunity. We reverse the trial court's decision and remand the matter.

{¶2} In the summer of 2016, H.J. was a participant in the Village Green Junior Golf Clinic. The clinic was a program designed to teach young people the game of golf. It was held at the Village Green Golf Course, which is owned by the Village and organized by volunteers. The volunteers – Howard Stern, Robert Felt, Richard Hill, and Kyle Van Allen – served as leaders or instructors for the clinic.

{¶3} To participate in the clinic, participants paid a $25 fee, which, according to Mr. Felt, volunteers used to spend on the children participating. The clinic ran from June 9, 2016 through July 12, 2016. Participants convened twice a week and each session lasted one and one-half hours. On the first day, Mr. Felt stated he outlined the nature of the clinic and discussed safety precautions. Most importantly, he emphasized that no participant should stand in front of or to the side of a person hitting a ball. The participants were ultimately placed in a group of approximately five individuals and an instructor/volunteer would assist them.

{¶4} On July 5, 2016, H.J. arrived at the course. Mr. Van Allen was not available to instruct that day and, as a result, D.P. was assigned to instruct H.J.'s group.

2

The group began by practicing chipping and putting and then moved on to play a hole. D.P. teed up, hit a shot, but, apparently dissatisfied, attempted another. When D.P. hit the first shot, H.J. was standing on the cart path, behind D.P. After he hit his second shot, he instructed the group to move to their tees. As H.J. sat his bag down, he was struck and knocked unconscious by a ball hit by D.P. After regaining consciousness, D.P. transported H.J. to the clubhouse via golf cart. He was picked up by his grandfather and, later, transported to the Ashtabula County Medical Center. He was subsequently life-flighted to a hospital in Cleveland, Ohio.

{¶5} Appellees filed a complaint alleging negligence, negligent hiring/training/supervision, and loss of consortium against appellants. Appellants filed a motion for summary judgment, which appellees duly opposed. And, on July 7, 2020, the trial court issued a judgment denying appellants' motion for summary judgment. Appellants filed the instant appeal, pursuant to R.C. 2744.02(C). Appellant, Village, assigns four errors, while appellant, D.P., separately assigns two. The Village first asserts:

{¶6} "The trial court erred as a matter of law in not granting summary judgment in favor of defendant-appellant Village of North Kingsville, pursuant to Chapter 2744 of the Ohio Revised Code after having properly concluded that defendant-appellant was engaged in a governmental function at all relevant times."

{¶7} D.P.'s first assignment of error provides:

{¶8} "The trial court erred finding a question of fact as to appellant [D.P's] violation of R.C. 2744.03(A)(6)(b)."

{¶9} As these assigned errors interrelate, we shall address them together.

3

{¶10} We review a trial court's entry of summary judgment de novo, i.e., "independently and without deference to the trial court's determination." *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993) (citation omitted).

{¶11} Civ.R. 56(C) provides that summary judgment is proper when:

{¶12} (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶13} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court [e.g., pleadings, depositions, answers to interrogatories, etc.] which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996), citing Civ.R. 56(C) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). If the moving party satisfies this burden, the nonmoving party has the burden to provide evidence demonstrating a genuine issue of material fact, pursuant to Civ.R. 56(E). *Id.* at 293.

{¶14} R.C. Chapter 2744 establishes a three-step analysis to determine whether a political subdivision is immune from liability. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556 (2000). First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. *Liming*, *supra*, at 556-557. Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). *Liming*, *supra*, at 557. Once general immunity has been

4

established by the political subdivision, the burden lies with the plaintiff to show that one of the recognized exceptions apply. *Maggio v. Warren*, 11th Dist. Trumbull No. 2006-T-0028, 2006-Ohio-6880, ¶38. Third, if any of the exceptions in R.C. 2744.02(B) applies, the political subdivision has the burden of showing that one of the defenses to liability in R.C. 2744.03 applies, and if so, immunity is reinstated. *Liming, supra*, at 557.

{¶15} In short, a political subdivision is generally immune from liability allegedly caused by any act or omission of it or its employees in connection with governmental or proprietary functions. R.C. 2744.02(A)(1). A political subdivision is liable, however, for injuries caused by it or its employees in connection with governmental or proprietary functions set forth under R.C. 2744.03(B)(1)–(5). If a plaintiff is able to establish one of these exceptions to immunity, the political subdivision may assert a defense to liability under R.C. 2744.03. Courts have noted that these defenses arise only in the event a plaintiff has established an exception to immunity under R.C. 2744.02(B). *Tasse v. Marsalek*, 8th Dist. Cuyahoga No. 109113, 2020-Ohio-5084, ¶20; *Wright v. Mahoning Cty. Bd. of Commrs.*, 7th Dist. Mahoning No. 08-MA-77, 2009-Ohio-561, ¶25; *Feitshans v. Darke Cty.*, 116 Ohio App.3d 14, 22 (2d Dist.1996); *Grooms v. Crawford,* 12th Dist. Brown Nos. CA2005-05-008 and CA2005-05-009, 2005-Ohio-7028, ¶13; in other words, R.C. 2744.03 does not create independent mechanisms for asserting liability, but is a means for the political subdivision to defend against an exception established under R.C. 2744.02(B), subject to exceptions set forth under R.C. 2744.03. *Cater v. Cleveland*, 83 Ohio St.3d 24, 32 (1998).

{¶16} Appellees concede there is no question of fact that the Village is a political subdivision of the State of Ohio. Moreover, although the Village takes issue with the

5

trial court's apparent application to agency theory principles in its analysis, there is no direct issue on appeal regarding the volunteers'/instructors' status as employees of the Village as their actions relate to the underlying cause of action. The real issue in this matter is whether the trial court, in concluding genuine issues of material fact exist for trial, determined appellees established an exception to the general grant of immunity.

{¶17} Appellants assert the trial court accurately concluded that, because the operation of the golf clinic occurred on its golf course, and the Village ratified the organization and participation in the clinic, the operation of the clinic was a governmental function. They cite to the express language of R.C. 2744.01(C)(2)(u)(v), which states that a political subdivision's operation, inter alia, of a golf course is a governmental function. They also cite the trial court's direct conclusion that "there is no issue that the Village was engaged in a governmental function * * *."

{¶18} Notwithstanding the foregoing, appellees contend the trial court did not conclude the operation of the clinic was a governmental function; rather, they assert the court deemed the operation a proprietary function and thus subject to the exception under R.C. 2744.02(B)(2). In support, they seem to assert the trial court mistakenly drew the wrong, express conclusion regarding the clinic's status as a governmental function and proceeded to a proper analysis of the R.C. 2744.03 defenses. To the extent this is the case, they maintain there is a genuine issue of material fact regarding whether D.P.'s actions were with malicious purpose, in bad faith, or in a wanton or reckless manner. *See* R.C. 2744.03(A)(6)(b).

{¶19} After considering the evidence and judgment entry in its entirety, we determine the trial court did not deem the operation a proprietary function, but rather a

governmental function. We therefore conclude the trial court's judgment fails to reflect appellee met its burden of establishing an exception to immunity. Notwithstanding this point, we agree with appellees that the trial court appears to have improperly moved forward and conducted an analysis of R.C. 2744.03, the statute which permits a political subdivision to assert certain defenses to the exceptions listed under R.C. 2744.02. This was error.

{¶20} In its memorandum in opposition to appellants' motion for summary judgment, appellees cited R.C. 2744.02(B)(2) as an applicable exception to the Village's immunity. That section provides: "Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." In its judgment entry, as stated above, the trial court unequivocally determined that "there is no issue that the Village was engaged in a governmental function and that Robert Felt and [D.P.] were employees of the Village at the time." As a result, the trial court determined R.C. 2744.02(B)(2) was inapplicable. And, because appellees only argued the application of the exception under that subsection, it is clear the trial court concluded appellees failed to establish the exception alleged.

{¶21} In concluding there is a genuine issue for trial, however, the trial court stated: "Nevertheless, the Village can be liable for injury caused by an employee if the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." There is no R.C. 2744.02(B) exception that utilizes this language. Instead, R.C. 2744.03(A)(6), under the defenses and immunities statutory provision,

7

provides: "In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3714.24 of the Revised Code, the employee is immune from liability unless one of the following applies: * * * (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶22} Because the trial court rejected appellees' argument that the Village was engaged in a proprietary function in operating the clinic, the court essentially concluded appellees failed to establish the only exception to immunity they advanced. Consequently, it was improper for the trial court to continue its analysis because the defenses under R.C. 2744.03 do not provide independent bases for imposing liability of a political subdivision. To the extent the trial court determined the exception to the defense under R.C. 2744.03(A)(6) applied, it erred as a matter of law. Still, in light of the manner in which the parties frame their respective arguments, we must still consider whether the trial court properly determined the political subdivision's operation of the golf clinic on its golf course was a governmental function.

{¶23} Pursuant to R.C. 2744.01(C)(2)(u)(v), the design, repair, maintenance, and operation of a golf course is a governmental function. Appellants contend, and the trial court agreed, that they were engaged in a governmental function, via the operation of a golf course in conducting the golf clinic. Appellees maintain appellants were engaged in a proprietary function in conducting the clinic. A proprietary function is that which is not enumerated as a governmental function under R.C. 2744.01(C) and "promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons." R.C.

2744.01(G)(1).  In support of their position, appellees cite *Copeland v. Cincinnati*, 159 Ohio App.3d 833, 2005-Ohio-1179 (1st Dist.).

{¶24}  In *Copeland*, a minor was enrolled in a day camp operated by the city of Cincinnati in a city-operated community center.  While attending the camp, he was sexually assaulted in a restroom of the community center. A lawsuit was filed alleging the city and its employees were negligent in their supervision and acted wantonly and recklessly in the performance of their obligations.  The trial court granted the city's motion to dismiss for failure to state a claim.  On appeal, the First Appellate District reversed the trial court, holding the city was not entitled to immunity under R.C. Chapter 2744.  The court determined the city's operation of the day camp was a proprietary function as opposed to a governmental function because "[t]he operation of a day camp by a city is distinct from its operation of an indoor recreational facility." *Id.* at ¶12.  The court further explained that "[b]ecause the operation of a day camp is not specifically listed as a governmental function in R.C. 2744.01(C), [it] is one that promotes public health, safety, or welfare, but is typically engaged in by nongovernmental persons * * *." *Id.*  The court thus concluded the activity in that matter was a proprietary function and a viable exception to immunity could be invoked.

{¶25}  Appellees assert that the golf clinic is akin to a day camp and thus, even though the Village owned and operated the golf course, the clinic was distinct from its operation of the course itself.  We, however, find *Copeland* distinguishable because, as previously noted, R.C. 2744.01(C), which defines "governmental functions," *expressly states* the operation of a golf course is a governmental function.  The golf clinic in this matter could not be conducted in a place other than a golf course.  The evidence

9

demonstrated the participants engaged in chipping and putting and would later play a hole on the course. As such, although other activities, such as a full round of golf, occurs on the golf course, this clinic necessarily required the course and thus, its operation, was inherently associated with the operation of *this* golf course. Moreover, in its judgment, the trial court stated:

{¶26} The individuals providing the instruction and supervising the clinic participants were acting as agents of the Village at the time of the golf clinic. They were not paid for their time conducting the golf clinic. Nevertheless, based upon the testimony of the individuals deposed, they organized the clinic at the request of the Village's golf pro, Van (Felt Depo. At 8). Although the Village was not paid a traditional "greens fee" by the clinic's participants, the Village benefited from the sale of concessions to the clinic participants. (Felt Depo. At 10). The Clinic was advertised as "Village Green Jr. Golf Clinic" (Felt Depo. Ex A). The Village's employees, the pro and groundskeeper, coordinated with the instructors which holes to use each day and the time for the clinic. (Felt Depo. At 19). Persons seeking information about, or to make reservations for, the clinic were directed to call the Village Green Golf Course. When [H.J.] was injured, the Village had his emergency contact information at the clubhouse and had Defendant Felt fill out an incident report. (Felt Depo. 27-30). It is disingenuous to argue that the persons running the golf clinic were not employees of the Village within the statutory definition. O.R.C. 2744.01(B). They could not possibly have conducted the clinic without the ongoing participation and ratification of the Village.

{¶27} The foregoing points, as noted in the trial court's citations, are supported by the deposition testimony of Mr. Felt. In light of the trial court's analysis, as well as the undisputed fact that the Village owned and operated the golf course, which is a statutorily enumerated governmental function, we conclude there is no genuine issue of material fact that the operation of the clinic was a governmental function. The trial court did not err in drawing this conclusion. We therefore hold appellees failed to establish an exception to immunity under R.C. 2744.02(B)(2), the only exception argued in the court

10

below. And, significantly, no other statutory exception applies to these facts. Because no exception applies in this matter, the trial court erred in proceeding to the R.C. 2744.03 defenses-to-exceptions-to-immunity analysis. We therefore sustain the Village's and D.P.'s first assignments of error.

{¶28} The Village's second, third, and fourth assignment of error provide, respectively:

{¶29} "The trial court erred as a matter of law when it utilized the theory of respondeat superior to deny defendant-appellant Village of North Kingsville summary judgment.

{¶30} "The trial court erred as a matter of law in not granting summary judgment in favor of defendant-appellant Village of North Kingsville pursuant to Ohio's Recreational User Immunity statute.

{¶31} "The trial court erred as a matter of law in not granting summary judgment in favor of defendant-appellant Village of North Kingsville with respect to plaintiffs-appellees' claim of negligence when plaintiffs-appellees failed to establish a prima facie case of negligence."

{¶32} And D.P.'s second assigned error provides:

{¶33} "The trial court erred regarding assumption of risk affirmative defense."

{¶34} Because we conclude appellees failed to establish an exception under R.C. 2744.02(B), appellants are entitled to statutory immunity. Accordingly, appellants' remaining assignments of error are overruled as moot.

11

{¶35} For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas is reversed and remanded with instructions for the court to enter judgment in appellants' favor as a matter of law.

MARY JANE TRAPP, P.J.,

MATT LYNCH, J.,

concur.